**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JONATHAN PASTERNAK and OWEN CAREY,
on behalf of themselves and all others similarly
situated,

                Plaintiffs,

      v.

HISMILE, INC.,

                Defendant.

Case No.:

**CLASS ACTION**
**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Jonathan Pasternak and Owen Carey, by and through their counsel, Denlea & Carton LLP, respectfully files this Class Action Complaint on behalf of themselves and a class of similarly-situated consumers in New York and Pennsylvania against HiSmile Inc. ("Defendant").   Plaintiffs make the following allegations based on the investigation of their counsel, and based upon information and belief, except as to those allegations specifically pertaining to themselves, which are based on their personal knowledge.

## PRELIMINARY STATEMENT

1.    This action seeks to redress the false, misleading, and deceptive advertising and packaging claims that Defendant HiSmile, Inc. ("Defendant") has made in connection with the sale of its purportedly "clinically proven" tooth whitening product marketed under the name *"HiSmile V34 Color Corrector Serum."*

2.    Tooth whitening products are big business in the United States, with consumers of all ages clambering for whiter, brighter teeth to illuminate their smiles.  More companies are trying to capitalize on this trend, offering a range of products such as gels, strips, emulsions, serums and

light-based technology that promise to reduce the accumulated effects of coffee, tea, red wine, energy drinks, sodas, and other teeth-staining foods and beverages, and restore consumers' dentition to a more pristine, pearly state.

3.      Products introduced in this increasingly saturated market have looked for ways to differentiate themselves and attract consumers through unique origin stories, creative marketing on social media, endorsements by celebrities and social media influencers, and science-backed claims regarding the efficacy of their products.

4.      Defendant is a relatively recent entrant to the U.S. market, having been started in Australia in 2014 by two young men who "had no history or particular knowledge of dentistry but nonetheless sunk $20,000 of their own money into the launch of their teeth-whitening brand."[1] Defendant now ships its products globally, and sells to customers in New York and Pennsylvania and throughout the region through its website, internet-based retailers such as Amazon.com and brick and mortar stores such as Walmart, Walgreens and CVS.

5.      Defendant offers peroxide-free products with different whitening mechanisms, with some, such as its "*V34 Colour Corrector Serum*" based on a "color correcting technology," marketed as "concealing" yellow stains, and others, such as its *Pap+ Whitening Strips* which contain a chemical known as phthalimidoperoxycaproic acid ("Pap"), marketed as "removing" yellow stains.

---

[1]  https://www.shopify.com/ie/case-studies/hismile (last visited June 10, 2024)



6.      As set forth more fully below, Defendant's website and marketing materials mislead its consumers about the purported dangers of peroxide-based products. In addition, Defendant falsely represents that its *V34 Colour Corrector Serum* is "clinically proven" and works "instantly" to whiten teeth and conceal yellow stains, when, at best, the product does nothing more than create a fleeting illusion of brighter teeth that swiftly washes away with food, drink and normal saliva production.

7.      Defendant further misleads its customers through its product packaging which touts the benefits of *V34 Colour Corrector* as "reduces yellow tones," "increases tooth brightness" and "heavy colour correction" without including any qualifying statements about the fleeting nature of its impact.

8.      By making these false claims, Defendant has defrauded consumers into purchasing products at a premium price that they believed to be clinically proven to be effective to whiten teeth when, in fact, Defendant's products do not.  Simply put, Plaintiffs and members of the class were deceived by Defendant's fraudulent marketing of *V34 Colour Correcting Serum* and Defendant profited from that deception at Plaintiffs and other class members' expense.

9.      By this action, Plaintiffs Jonathon Pasternak and Owen Carey seek to redress Defendant's unfair and deceptive marketing campaign built upon the misleading claims that it makes and to obtain the financial recompense to which Plaintiffs and their fellow class members are entitled.

## THE PARTIES

10.      Plaintiff Jonathan Pasternak is an individual who resides in Cheektowaga, New York.

11.      Plaintiff Owen Carey is an individual who resides in Brewster, New York.

12.      Defendant HiSmile, Inc. is a Delaware Corporation with its principal place of business in Queensland, Australia.

13.      Defendant manufactures, markets, and sells *V34 Colour Correcting* throughout the region, including in New York State and Pennsylvania, through its website, us.hismileteeth.com, and on-line retailers such as Walmart.com, and Amazon.com, as well as brick-and-mortar stores such Walmart and Walgreens.

## JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) at least one class member is a citizen of a state different than Defendant. Complete diversity also exists between at least one plaintiff and Defendant. 28 U.S.C. § 1332(d)(2)(A).

15.      The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

16.     This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in New York, including at least one Plaintiff's purchase of the Products.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district, at least one of the Plaintiffs resides within this judicial district, and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## FACTUAL BACKGROUND

I.     **Defendant Misleads Consumers By Making False Claims about the Harms of Peroxide As Well As The Benefits and Efficacy of its Peroxide-free Products Such as V34 Colour Correcting Serum**

**A.  Defendant's False Claims About Peroxide Mislead Consumers**

18.     The Defendant's website and marketing materials are saturated with claims about peroxide that are simply not true.  For example, on its webpage "How Whitening Works," Defendant claims that:

> Both PAP whitening and peroxide-based teeth whitening treatments use oxidising action to break down stains and lighten tooth appearance.
>
> As part of this process, **peroxide releases something known as free radicals.** Free radicals readily attack organic molecules to reduce discolouration, but **are also likely to cause unwanted side**

**effects such as sensitivity, gum irritation, and demineralisation**.[2]

19.     Similarly, on multiple Amazon.com webpages, HiSmile describes the "problem" of traditional teeth whitening as: "it's painful, it causes sensitivity, or it can be a long uncomfortable trip to the dentist thanks to Peroxides."[3]  Under "what makes our products unique," Defendant states: "Unlike Peroxide we use PAP, which similarly reacts with tooth stains, only without the release of free radicals. **Meaning no sensitivity, pain, or enamel damage**." Elsewhere in its advertisements Defendant refers to peroxide as having "**nasty side effects**."[4]

20.     In reviewing Defendant's product, the National Advertising Division of the BBB National Programs (the "NAD")[5] found these claims about peroxide to be misleading and false.  A

---

[2]  https://us.hismileteeth.com/pages/research-centre/how-whitening-works (last visited May 16, 2024)

[3] https://www.amazon.com/Hismile-Corrector-Whitening-Toothpaste-Correcting/dp/B09LH36816/ref=sr_1_1_sspa?crid=UULHSZAIF96D&dib=eyJ2IjoiMSJ9.UZrAAKVsijaeVBYVrZjSHkr9vMVXbqeYHuJnpiXGWoyZiINBNZnggqK-pl7VzGQbN_60MOLattEmWh9wFaVx07F9HESrNC7A8qIlsQyrAlYPA-D9FsL1NQXJIuzM_ugexa22X6Kk59NP4coWP8B1obmChQlsNj6JKlFFyyeYfooKyJAVz0yDNz-R_Qni1q_A7YVheyGbuLNhbCL-lfB44TveSUb0KMh7B-7BllekhK1Dn4v7t4Uvv_1d86tIa11OGs6y6frcDvxZ_xVfcQ-Ubbb9oJRDgdw5txEA7eAwJfg.jXf3HubvLXzwFew32tMMcav2wc6DXZA16BiT7fDSJKA&dib_tag=se&keywords=hismile&qid=1715370979&sprefix=hismile%2Caps%2C65&sr=8-1-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1 (last visited May 16, 2024)

[4]  *Id.*

[5] The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising.  It reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business.  An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission.  NAD referrals receive priority treatment from the Federal Trade Commission.

copy of the NAD decision, HiSmile PTY (Pap+ Strips & V34 Colour Whitening Serum), Report #7276 NAD/CARU Case Reports (April 2024), is attached as Exhibit A.  Although Defendant offered evidence in the proceeding to support its claims, the NAD found that "nothing in the record here demonstrates that peroxide-containing teeth whiteners are unsafe, damaging or painful." Ex. A, p. 4.  In fact, during the proceeding, Defendant agreed to discontinue any reference to peroxide causing "damage." The NAD noted that its finding in this regard was consistent with its conclusion in a similar case that "[n]either the literature provided [by the advertiser] nor the expert declaration conclude that these side effects [tooth sensitivity and gum irritation] are damaging or unsafe."[6] Ex. A, p. 4.

21.    Despite NAD's findings – and the Defendant's public agreement to abide by them and remove the claims about peroxide – the false claims continue to appear on Defendant's website and in its marketing materials, including as set forth below, in its advertisements for *V34 Colour Correcting Serum.*

22.    In short, Defendant continues to mislead consumers about the purported harms of peroxide.

**B. Defendant Also Misleads Consumers About the Benefits of its V34 Colour Correcting Serum by Falsely Claiming that it is "Clinically Proven … to Instantly Whitens Teeth," and That It Contains "Colour Correcting Technology" that Conceals, Reduces or Neutralizes Yellow Tones and Is Effective for "Heavy Colour Correction."**

23.    In order to differentiate their products and gain a competitive edge, manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their products is backed by science (*i.e.*, "establishment claims"), when, in fact, it is not.  That is why Courts are

---

[6] Ex. A, page 4 (citing Oral Essentials, Inc. (Lumineux Whitening Strips), Report #7152 NAD/CARU Case Reports (February 2023).

particularly wary of claims by manufacturers that their product has been scientifically proven to be effective when, as here, those claims are false.  The NAD has cautioned that "[a]dvertisers that make establishment claims such as "clinically tested," "scientifically tested" or "clinically proven" are held to a higher standard of proof because the claims are, in essence, a promise that there is scientific evidence that proves or establishes the truth of the Advertiser's claims."[7]

24.     An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence," which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.'"[8]  As the FTC has stated, "well-controlled human clinical studies are the most reliable form of evidence."[9]

25.     HiSmile differentiates its teeth whitening product "*V34 Colour Corrector Serum*" by claiming in its website that it is a "clinically proven .. instant teeth whitener that's peroxide-free" using "colour correcting technology [to] conceal the yellow tones in your teeth to enhance the whiteness of your smile."[10]  Defendant's website further describes *V34 Colour Corrector Serum* as "an instant teeth whitener that's designed to work exactly like a concealer, but for your

---

[7] *Bayer Consumer Health v. Focus Consumer Healthcare*, Case # 7247, NAD Case Reports (January 9, 2024).

[8] FTC, Health Products Compliance Guidance (last updated December 2022), https://www.ftc.gov/business-guidance/resources/health-products-compliance-guidance#_edn29 (last visited May 16, 2024)

[9] *Id.*

[10] https://us.hismileteeth.com/products/colour-corrector/ (last visited June 10, 2024)

teeth. Through colour correcting technology, it conceals the yellow tones in your teeth to improve and enhance the brightness of your smile."[11]



26.     Videos on the product's webpage make it clear that the transformation of tooth color shown in the image above occurs instantly: the model rubs the product on his teeth, squirts them with water to rinse off the product, and immediately displays whiter, brighter teeth.[12]  Similar videos posted on the brand's Instagram and TikTok pages show amazed and exuberant consumers applying the *V34 Colour Correcting Serum* to their teeth and instantly showing brighter, whiter teeth.[13] Other TikTok advertisements feature people dressed in lab coats or scrubs obtaining instant results, suggesting that the product is recommended by scientists and dentists.[14]  Another TikTok

---

[11]  *Id.*

[12]  https://us.hismileteeth.com/products/colour-corrector/ (last visited June 10, 2024)

[13]  https://www.instagram.com/p/C6xTay-MLWx/ (last visited June 10, 2024); https://www.instagram.com/reel/Cdw9Pc4FE_9/ (last visited June 10, 2024); https://www.tiktok.com/@hismile/video/7363884556195253521 (last visited June 10, 2024).

[14]  https://www.tiktok.com/@hismile/video/7366868793529830664 (last visited May 17, 2024); https://www.tiktok.com/@hismile/video/7366854998975581441 (last visited June 10, 2024). Fine print in both of these videos discloses that the participants are all actually members of the HiSmile staff.

video shows V34 Serum being applied to a yellow bath duckie and, when it is wiped off, a white

stripe appears.[15]   On its Facebook page, a product spokesman explains that "in thirty seconds" the

purple tone "neutralizes" the yellow stains.  Immediately after the spokesman rubs the product on

a model's teeth, he wipes it off with his finger revealing white teeth, proclaiming "as quick as that,

instantly brighter teeth."[16]

27.     The product packaging for *V34 Colour Correcting Serum* describes the product as

"a colour correction serum that enhances brightness and conceals yellow tones on the tooth

surface" with no qualifying information about how long such a benefit purportedly lasts.  To the

contrary, the packaging lists the product benefits as:



28.     Defendant makes similar representations about its V34 *Colour Correcting Serum*

product on Amazon.com, claiming that it "instantly cancels yellow undertones for a whiter smile,"

---

[15]  https://www.tiktok.com/@hismile/video/7363881686087585041 (last visited June 10, 2024).
A tiny hard-to-read note in the bottom of the video reveals that the duck is "a dramatization" and
"not a real experiment."

[16]  https://www.facebook.com/reel/481416356929720 (last visited June 10, 2024)

and has "no harsh peroxides."[17]  In another Amazon tile linked to the same webpage, Defendant explains that the Product "[u]ses light and colour theory, to effectively minimise yellow stains, giving your teeth a temporary brighter appearance."  Elsewhere, on the same page, the Defendant claims that the product "conceals" stains and "neutralizes" yellow.  In another Amazon webpage, an image from which is reproduced below, Defendant touts the Product's benefits as "peroxide-free," "no sensitivity," "cancels stains" and "daily brightening."[18] An embedded video of a model scrubbing *V34 Colour Correcting Serum* on her teeth and instantly having a brighter smile appears above the tile.



---

[17] https://www.amazon.com/Hismile-Corrector-Whitening-Toothpaste-Correcting/dp/B09LH36816/ref=sr_1_1_sspa?crid=UULHSZAIF96D&dib=eyJ2IjoiMSJ9.UZrAAKVsijaeVBYVrZjSHkr9vMVXbqeYHuJnpiXGWoyZiINBNZnggqK-pl7VzGQbN_60MOLattEmWh9wFaVx07F9HESrNC7A8qIIsQyrAlYPA-D9FsL1NQXJIuzM_ugexa22X6Kk59NP4coWP8B1obmChQlsNj6JKlFFyyeYfooKyJAVz0yDNz-R_Qni1q_A7YVheyGbuLNhbCL-lfB44TveSUb0KMh7B-7BllekhK1Dn4v7t4Uvv_1d86tIa11OGs6y6frcDvxZ_xVfcQ-Ubbb9oJRDgdw5txEA7eAwJfg.jXf3HubvLXzwFew32tMMcav2wc6DXZA16BiT7fDSJKA&dib_tag=se&keywords=hismile&qid=1715370979&sprefix=hismile%2Caps%2C65&sr=8-1-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1 (last visited June 10, 2024)

[18] https://www.amazon.com/stores/page/12D80051-A359-4540-AA34-498314FA4E5D?ingress=2&visitId=c0d2d923-614d-44f2-887b-b37cee6861c8&store_ref=bl_ast_dp_brandLogo_sto&ref_=ast_bln (last visited May 16, 2024)

29.     On its Amazon.com sales page for *V34 Colour Correcting Serum*, Defendant contrasts all of its products favorably with "traditional teeth whitening" claiming that "its goal [in creating the product line] was simple: Create an at-home whitening treatment that's effective as peroxide – without the nasty side effects."

30.     Upon information and belief based on the ingredient list, it appears that the Product's signature deep purple color and unctuous texture result from a blend of emulsifiers and synthetic red and blue dyes, specifically D&C Red No. 33 and FD&C Blue No. 1.  Defendant's so-called "colour correcting technology" is actually basic color theory.  As Defendant explains on its Amazon tile, "[a]pplying purple onto your teeth neutralises yellow undertones by cancelling them, giving your teeth a perceptively brighter shade of white."  Unfortunately, this "technology" as formulated by HiSmile just doesn't work: any transient appearance of brightening almost immediately washes away with the ingestion of food or drink or through the mouth's normal production of saliva.

31.     Defendant's customers have complained loudly on internet forums such as www.reddit.com and www.trustpilot.com that the advertising and marketing claims that Defendant makes on behalf of *V34 Colour Correcting Serum* are just plain false.[19]  These negative reviews point out that, while the purple color can temporarily mask the yellow appearance of teeth, the effect washes away as soon as the user eats or drinks anything, or even salivates or licks their teeth.

---

[19]  https://www.reddit.com/r/askdentists/comments/146iaej/hismile_purple_toothpaste/; https://www.reddit.com/r/beauty/comments/17vtr5z/hismile_advertising_is_misleading_dont_fall_for/; https://www.reddit.com/r/askdentists/comments/sd2fne/does_the_hismile_v34_colour_corrector_work_and/ ; https://www.trustpilot.com/review/hismileteeth.com (last visited June 10, 2024).

# Hismile advertising is misleading. Don't fall for the hype (it's fake hype anyway)

Their advertising is false, they MUST hide negative reviews from their website because there are many on trustpilot. There is no way for me to leave a review on the website, despite being a confirmed buyer. The people who endorse the products online are.maling money from people buying, so they mislead us Unfortunately I fell for it all.

Their videos of the v3 purple serum... I expected to wipe it off and see perfect whiteness compared to the rest. Nope. Just a minor purple stain that just goes away once you rinse.

 **Quirky_Painter5900** · 5mo ago

I bought the v34, tried it twice a day like recommended for a month, zero results. I actually have no idea how they can sell a blatant lie. Their advertisements are actual cons. Can't believe chemist warehouse (Australia) stocks them, wish I kept my receipt. How do they keep getting away with it.

 **Next_Cardiologist544** · 7mo ago

Total scam! I tried to return this shitty product and their customer service is terrible. Very misleading advertising. Don't get scammed like I did. Please DM me if you want more details about how this just doesn't work at all.

 ⬆ 1 ⬇   ↑ Share   ⋯

 **DrBigDaddie** · 5mo ago

It doesn't actually whiten. It coats your teeth with a thin film of the purple color, which counteracts the yellow, making them look white, but if you drink or eat anything.... Even lick your teeth, the thin film on your teeth will wipe off removing the white. It doesn't actually whiten, it just makes them look white for like 30 min until you drink or eat.

 **Suspicious-Ad5508** · 1y ago

It's absolutely garbage used a few weeks returning it now. Don't waste your money or time. I have decent teeth it's my canine teeth that had some yellowing coffee etc.. The product isn't even as thick as it seems in the ads. I got dupped by a snake oil salesmen and I usually don't fall for those!! Lol



32.     Negative reviews on Amazon.com similarly document rampant consumer dissatisfaction with the brand:[20]

 Karyn

★☆☆☆☆ **Don't believe what TikTok is saying… it doesn't work**
Reviewed in the United States on April 17, 2024
**Verified Purchase**

I wanted to leave a review because I saw all the bad ones and I wanted to add to that base. I know people write bad reviews even when a product is truly good. So, I wanted to try it out for myself…. They were not wrong!

I tried using a toothbrush and brushing in circular motions for 30 seconds (as the product says to) and it did nothing. I tried to brush in circular motions for 2 minutes (as the internet advertised) and nothing. I even tried putting a glob on the material on a tooth for 30 seconds (as tik tok suggested) …. AND STILL NO DIFFERENCE!

I would also like to mention that the staining of the product is really bad. I put some on my finger to apply it and my finger is now very purple.

I know people are going to buy this product despite the bad reviews, but this is my effort to share an unbiased opinion from someone who truly wanted this product to work. Please do not waste your time or money on this product, as it does not show the results it promised.

Drew

★☆☆☆☆ **I brushed half my teeth - TWICE!**
Reviewed in the United States on May 2, 2024
**Verified Purchase**

Just to see the results in comparison, I brushed half of my teeth to see these "sudden results" this brand and paste claim to have!!! I am beyond disappointed and upset that I've been advised this product for the past year and finally tried it out, only to find absolutely NO results! I've done it by the instructions on the bottle MULTIPLE times! And I've even just left it STRAGHT on my teeth for a while too! Absolutely NOTHING! Highly do NOT RECOMMEND!!!! I took a picture of my teeth after using the product twice, and I bet you can't even tell which side I used the product on. Absolutely ridiculous.



33.     Defendant's misleading advertising on social media platforms has also drawn the ire of the Advertising Standards Authority (ASA) in the UK.  The ASA specifically considered ads for *V34 Colour Correcting Serum* that appeared on Instagram and TikTok, finding that "consumers would understand both ads to mean that using the product on their teeth would get rid of stains immediately and make teeth appear whiter and brighter … **they would not expect the**

---

[20] https://www.amazon.com/product-reviews/B09LH36816/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (last visited June 10, 2024)

**effect to be permanent,** but **that it would have a lasting effect beyond short term eating and drinking**"[21] (emphasis added).  While the ASA acknowledged "that voice-over suggested that product worked differently from bleaching or whitening teeth … we considered the impression was that the results would be the same and that they would be instant." [22] After considering materials submitted by Defendant, including what it represented to be clinical studies on the product, the ASA concluded the ads were misleading as to the claimed effects of *V34 Colour Correcting Serum.*

34.     In short, Defendant's claims that *V34 Colour Correcting Serum* is "clinically proven" to be an "instant teeth whitener," that its "colour correcting technology" conceals, reduces and/or neutralizes the yellow tones and that it is effective for "heavy colour correction" in teeth are misleading and false.

## II.     Plaintiffs Purchased Defendant's Products

35.     Prior to purchasing *V34 Colour Correcting Serum,* Mr. Pasternak was exposed to Defendant's marketing on social media in New York and believed it to be an effective product which would instantly whiten his teeth and neutralize yellow stains in a way that would be noticeable to others and that would last for a period of time.

36.     On or about March 7, 2024, Mr. Pasternak purchased *V34 Colour Correcting Serum* from a Walmart located in Cheektowaga, New York, based on Defendant's marketing and advertising that the product was clinically proven to whiten and brighten his teeth.

---

[21] https://www.asa.org.uk/rulings/hismile-pty-ltd-g23-1212696-hismile-pty-ltd.html (last visited June 10, 2024).  This is not the first of Defendant's product advertisements to be criticized by the ASA as false and misleading.  In 2020, for example, the ASA found that a snapchat ad for a different tooth-whitening device was misleading.  https://www.asa.org.uk/rulings/hismile-pty-ltd-a20-1060221-hismile-pty-ltd.html (last visited June 10, 2024)

[22] *Id.*

37.    Mr. Pasternak applied the product to his teeth following the directions on the box on two occasions.  The first time he applied the product, he followed the directions on the box by applying two pumps on his toothbrush, polishing for thirty seconds and then rinsing.  Apart from a slightly purple tone left on the whiter spots of his teeth, his teeth did not look noticeably different after he rinsed.

38.    On the second occasion, Mr. Pasternak applied the product with a Q-tip and let it sit on his teeth for two minutes before rinsing as shown on one of Defendant's advertisements on social media.  After rinsing, Mr. Pasternak did not notice any difference in the color of his teeth except for the slight purple tone.

39.    Had Mr. Pasternak known that *V34 Colour Correcting Serum* was not proven to be effective to whiten his teeth, he would not have purchased it.

40.    Prior to purchasing *V34 Colour Correcting Serum* Mr. Carey, a resident of New York who attends college in Pennsylvania, was exposed to Defendant's marketing on social media in New York, Florida, and Pennsylvania, and believed it to be an effective product which would whiten his teeth and conceal yellow tones.

41.    On or about August 25, 2023, Mr. Carey purchased *V34 Colour Correcting Serum* from a Walmart in Selinsgrove, Pennsylvania believing, based on Defendant's marketing and advertising, that the purple product color would cancel out the yellow tooth color and that it would instantly whiten and brighten his teeth.

42.    Mr. Carey applied the product using several different methods, including using a toothbrush, his finger and a Q-tip and left the product on for a short period of time as directed before rinsing.  Despite following directions, he did not observe any change in the color of his teeth.

43.     Had Mr. Carey known that *V34 Colour Correcting Serum* was not proven to be effective to whiten his teeth, he would not have purchased it.

44.     Both Mr. Pasternak and Mr. Carey, like their fellow consumers, wasted their money buying a product that falsely advertised its alleged benefits.

## CLASS DEFINITION AND ALLEGATIONS

45.     Plaintiff Pasternak brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "New York Subclass"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) *V34 Colour Correcting Serum* manufactured, marketed, distributed, and/or sold by Defendant which Defendant warranted as being a "Clinically Proven … instant teeth whitener" with "colour correcting technology" that conceals and/or neutralizes the yellow tones in teeth and is effective for "heavy colour correction," (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Product for resale.

46.     Plaintiff Carey brings this action on behalf of himself and all other similarly situated consumers in the State of Pennsylvania pursuant to pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Pennsylvania Subclass"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of Pennsylvania (whether online or in-person) *V34 Colour Correcting Serum* manufactured, marketed, distributed, and/or sold by Defendant which Defendant warranted as being a "Clinically Proven … instant teeth whitener" with "colour correcting technology" that conceals and/or neutralizes the yellow tones in teeth and is effective for "heavy colour correction," (the "Class Product"). Excluded from the class are Defendant, its

parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Product for resale.

47.    Plaintiffs expressly disclaim any intent to seek any recovery in this action for personal injuries that they or any Class member may have suffered.

48.    **Numerosity**.  This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiffs are informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown.

49.     **Existence and Predominance of Common Questions of Law and Fact**.  This action involves questions of law and fact common to the Class.  The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of the laws asserted.

- Whether Defendant labeled, advertised, marketed, and/or sold the Class Product as a "Clinically Proven … instant teeth whitener" with "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and is effective for "heavy colour correction."

- Whether Defendant's labeling, advertising, marketing, and/or selling of the Class Product as a "Clinically Proven … instant teeth whitener" with "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and is effective for "heavy colour correction," was and/or is false, fraudulent, deceptive, and/or misleading.

- Whether Plaintiffs and the members of the Classes are entitled to statutory damages;

- Whether Plaintiffs and the members of the Classes are entitled to other appropriate remedies including attorneys' fees and costs.

50.    **Typicality** Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's blatant misrepresentations that the Class Product was a "Clinically proven … instant teeth whitener" and that it contains "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and is effective for "heavy colour correction."

51.    Moreover, Plaintiffs claims are typical of the Class members' claims.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

52.    **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs purchased the Class Products, and they were harmed by Defendant's deceptive misrepresentations.  Plaintiffs have therefore each suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased the Class Products.  Plaintiffs have retained counsel who are adept, sophisticated, and experienced in the field of class action litigation, and have adequate resources to fully and zealously advocate on behalf of the class.

53.    **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of

inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

54.     Plaintiffs seek monetary damages, including statutory damages on behalf of the entire Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiffs and the members of the Class will have suffered damages.

**COUNT I**
**Violation of New York General Business Law Section 349**
**(On Behalf of Plaintiff Pasternak and the New York Subclass)**

55.     Plaintiff Pasternak realleges and incorporates by reference the allegations in paragraphs 1 through 54 as if fully set forth herein.

56.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York."

57.     By labeling, advertising, marketing, distributing, and/or selling the Class Product to Plaintiff Pasternak and the other New York Subclass members as a "Clinically proven … instant teeth whitener" containing "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and is effective for "heavy colour correction," Defendant engaged in, and continues to engage in, deceptive acts and practices because the Class Product has not been proven to be effective.

58.     In taking these actions, Defendant failed to disclose material information about its product, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

59.     Defendant has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

60.     Defendant's conduct was consumer oriented.

61.     Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

62.     Defendant's false "Clinically proven … instant teeth whitener," claim was and is misleading in a material respect as to whether the Class Product was, in fact, clinically tested and proven effective with respect to the consumers the Defendant targeted.

63.     Defendant's false claim that the Class Product contains "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth, was and is misleading in a material respect as to whether the Class Product is effective to conceal or neutralize yellow tones in teeth.

64.     Defendant's false claim that the Class Product is beneficial for "heavy colour correction" was and is misleading in a material respect as to whether the Class Product is effective to conceal significant discoloration of teeth.

65.     Based on, among other things, Defendant's knowledge that the Class Product was not proven in a clinical setting and is not effective to conceal, reduce or neutralize yellow tones in teeth or to correct heavy discolorations of teeth, Defendant knew that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

66.     Plaintiff Pasternak and the New York Subclass members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff Pasternak and the members of the New York Subclass have been substantially injured by purchasing and/or overpaying for the Class Product which is not what Defendant represents it to be.

67.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff Pasternak and the New York Subclass for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

68.     Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly.  Accordingly, Plaintiff Pasternak and members of the New York Subclass are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

### COUNT II
### Violation of New York General Business Law Section 350
### (On Behalf of Plaintiff Pasternak and the New York Subclass)

69.     Plaintiff Pasternak realleges and incorporates by reference the allegations in paragraphs 1 through 68 as if fully set forth herein.

70.     Defendant's labeling, marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

71.     No rational individual would purchase the Class Product at the premium price at which it is sold if that individual knew that the Class Product was not a "Clinically proven … instant teeth whitener" which is how Defendant markets the Class Product.

72.     Defendant's advertisements and marketing of the Class Product as "Clinically proven … instant teeth whitener" and as containing "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and as effective for "heavy colour correction," were consumer oriented.

73.     Defendant's advertisements and marketing of the Class Product as a "Clinically proven … instant teeth whitener" and as containing "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and as effective for "heavy colour correction," were misleading in a material respect.

74.     By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff Pasternak and the members of the New York Subclass have been substantially injured by overpaying for a product that has diminished value due on account of the false claim that it has been tested clinically and proven effective.

75.      Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff Pasternak and the members of the New York Subclass for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

76.     Defendant continues to violate Section 350 of the New York General Business Law and continues to aggrieve Plaintiff Pasternak and the members of the New York Subclass.

**COUNT III**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer**
**Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq.***
**(On Behalf of Plaintiff Carey and the Pennsylvania Subclass)**

77.     Plaintiff Carey realleges and incorporates by reference the allegations in

paragraphs 1 through 76 as if fully set forth herein.

78.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat.

Ann. §§ 201-1 et seq. (the "UTPCPL") makes unlawful "[u]nfair methods of competition and

unfair and deceptive acts or practices in the conduct of any trade or commerce."

79.      The UTPCL specifically defines what constitutes unfair methods of competition

and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of

73 Pa. Const. Stat. 201-3, including the following:

>       a.      representing that its goods and services have characteristics, uses,
> benefits, and qualities they do not have (73 Pa. Cons. Stat. § 201-2(4)(v));
>
>       b.      representing that its goods and services are of a particular standard
> or quality if they are another (73 Pa. Cons. Stat. § 201-2(v)(vii));
>
>       c.      advertising its goods and services with intent not to sell them as
> advertised (73 Pa. Cons. Stat. § 201-2(4)(ix)); and
>
>       d.      engaging in any other fraudulent or deceptive conduct which
> creates a likelihood of confusion or of misunderstanding (73 Pa. Cons. Stat. § 201
> 2(v)(xxi)).

80.     Defendant is a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

81.     Plaintiff Carey and Pennsylvania Subclass Members purchased goods and

services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for

personal, family, and/or household purposes.

82.     Defendant knew or should have known that when the Class Product left its

control, that they were not in conformity or consistent with representations made on the

packaging and in its marketing and advertising.    Accordingly, Defendant's Product did not provide the represented and warranted benefits.

83.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

84.    Defendant intended that Plaintiff Carey and other Pennsylvania Subclass Members rely on its omissions and misrepresentations, and this reliance was crucial to Defendant commanding a premium price for the Class Product.

85.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Carey and the Pennsylvania Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Product.

86.    Defendant deceived and continues to deceive consumers about the Class Product. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendant is continuing, with no indication that it will cease.

87.    Accordingly, Defendant's deceptive and misleading statements deceived Plaintiff Carey and the Pennsylvania Subclass Members and a substantial segment of the target consumer audience and improperly influenced consumers' purchasing decisions, as Plaintiff Carey and Pennsylvania Subclass Members relied on such misrepresentations in violation of the UTPCPL.

88.    Defendant represented that the Product had characteristics it did not have, by labeling, advertising, marketing, distributing, and/or selling the Class Product to Plaintiff Carey and the other Pennsylvania Subclass members as a "Clinically proven … instant teeth whitener" and as containing "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth and as effective for "heavy colour correction." 73 P.S. § 201-2(4)(v).

89.     Defendant represented the Class Product, through its marketing as "clinically proven" was "of a particular standard, quality or grade," even though "[it was] of another," because it was not clinically proven. 73 P.S. § 201-2(4)(vii).

90.     Defendant engaged in fraudulent and/or deceptive conduct which created the likelihood of confusion or of misunderstanding by consumers as to the effectiveness of the Class Product.  73 P.S. § 201-2(4)(xxi).

91.     Defendant failed to state a material fact, which was that the perceived benefits, if any, of its Product were transitory and fleeting, and the failure to do so deceived or tends to deceive consumers.

92.     Defendant's false "Clinically proven … instant teeth whitener," claim was and is misleading in a material respect as to whether the Class Product was, in fact, clinically tested and proven effective with respect to the consumers the Defendant targeted.

93.     Defendant's false claim that the Class Product contains "colour correcting technology" that conceals, reduces and/or neutralizes the yellow tones in teeth, was and is misleading in a material respect as to whether the Class Product is effective to conceal or neutralize yellow tones in teeth.

94.     Defendant's false claim that the Class Product is suitable for "heavy colour correction" was and is misleading in a material respect as to whether the Class Product is effective to conceal significant discoloration of teeth.

95.     Plaintiff Carey and Pennsylvania Subclass Members believed the Product was clinically proven to be effective.

96.     Plaintiff Carey and Pennsylvania Subclass Members read and relied on the label and the Product's advertising which represented the Product "reduces yellow tones," "increases

26

tooth brightness" and "heavy colour correction," without any qualifying terms, which caused them to believe they were buying a product with more than an illusory or fleeting benefit.

97.     Plaintiff Carey and Pennsylvania Subclass Members paid more for the Product and would not have paid as much if they knew that it was not clinically proven and/or that any benefits would be best illusory and fleeting.

98.     Plaintiff Carey and Pennsylvania Subclass Members seek to recover for economic injury and/or loss they sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the UTPCPL, by paying more for it than they otherwise would have.

99.     Plaintiff Carey and Pennsylvania Subclass Members will produce evidence showing how they and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions.

100.    Plaintiff Carey and Pennsylvania Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief this Court deems necessary or proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.      Certifying this action as a class action, pursuant to FRCP 23, comprised of the Class as defined above as soon as practicable, designating Plaintiffs as the named Subclass representatives and designating the undersigned as Class Counsel.

B.      On Plaintiffs' Count I, awarding against Defendant the damages that Plaintiff Pasternak and the other members of the New York Subclass have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.      On Plaintiffs' Count II, awarding against Defendant the damages that Plaintiff Pasternak and the other members of the New York Subclass have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.      On Plaintiffs' Count III, awarding against Defendant the damages that Plaintiff Carey and the other members of the Pennsylvania Subclass have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

E.      On Counts I, II and III, awarding Plaintiffs and the Class interest, costs, and attorneys' fees.

F.      Awarding Plaintiffs and their respective class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:       June 10, 2024
               White Plains, New York

**DENLEA & CARTON LLP**

By:   _/s/ Catherine H. Friesen_____
Jeffrey I. Carton, Esq.
James R. Denlea, Esq.
Catherine H. Friesen, Esq.
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
cfriesen@denleacarton.com