# Exhibit A

# To the Complaint
# NAD Decision

Case #7276 (04/02/2024)
**HiSmile PTY**
**PAP+ Strips, V34 Color Correcting Serum**
*Challenger*: The Procter & Gamble Company
*Product Type*: Cosmetics / Beauty Products / Toiletries
*Issues*: Disparagement Claims; Efficacy Claims
*Disposition*: Modified / Discontinued

## BBB NATIONAL PROGRAMS

### *NATIONAL ADVERTISING DIVISION*

THE PROCTER & GAMBLE COMPANY,
  *Challenger*,

HISMILE PTY,
  *Advertiser*.

Case No. 7276
Closed 04/02/2024

## FINAL DECISION

- **There is a distinction between claims that underscore a product's claimed benefit versus claims that state or reasonably imply that other products are unsafe or pose potential risks or dangers.**

### I. Basis of Inquiry

The advertising industry established the National Advertising Division ("NAD") and the National Advertising Review Board ("NARB") in 1971 as an independent system of self-regulation designed to build consumer trust in advertising. NAD reviews national advertising in all media in response to third-party challenges or through inquiries opened on its own initiative. Its decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. Challenger The Proctor & Gamble Company ("P&G" or "Challenger") challenged express claims made by Advertiser HiSmile PTY ("HiSmile" or the "Advertiser") for its PAP+ Strips and V34 Color Correcting Serum. The following are representative of the claims that served as the basis for this inquiry:

 A. *Express Claims*

- Traditional teeth whitening is painful…
- Create an at-home whitening treatment that's just as effective as hydrogen peroxide – without the nasty side effects.
- Peroxide breaks down anything – impacts gums and tooth enamel.
- PAP similarly [to peroxide] reacts to tooth stains, without any risk of pain, sensitivity, or damage.
- Typically, whitening toothpaste contains peroxide which will damage your teeth…

1

## II. Evidence Presented

The Advertiser submitted copies of pages from its website which it argued provided the full context for the challenged claims and describes the Advertiser's foundational story and its decision to use Phthalimidoperoxycaproic acid ("PAP") in its teeth whiteners. The Advertiser also submitted documents that it contended provide reliable evidence about the risk of pain, sensitivity or damage from peroxide tooth whitening.[1]

The Challenger submitted a safety assessment of its Crest Whitestrips™, a summary of studies that show a whitening benefit of its product and change in color at 7-day and 14-day time periods, and the results of certain clinical studies demonstrating whitening efficacy for the Challenger's strips. The Challenger also submitted scientific and testing data regarding PAP.

## III. Decision

The parties are competing manufacturers of teeth whitening products. Hismile makes tooth concealer products, and teeth whitening products containing PAP, while the Challenger manufactures Crest Whitestrips which contain hydrogen peroxide.

The express claims at issue in this challenge include claims that "traditional teeth whitening is painful," that "Peroxide breaks down anything – impacts gums and tooth enamel" and that "typically, whitening toothpaste contains peroxide which will damage your teeth." P&G also challenged claims that the Advertiser sought to "create an at-home whitening treatment that's just as effective as hydrogen peroxide – without the nasty side effects" and that "PAP similarly [to peroxide] reacts to tooth stains, without any risk of pain, sensitivity, or damage." P&G also challenged what it described as slight modifications and iterations of the express claims identified above that appeared in videos on social media including claims that the Advertiser's products, unlike peroxide products "does not painfully oxidize your teeth," and that whitening strips are "notorious for being harsh on your teeth and often causing pain."

### A.   The Discontinued Claim

Hismile informed NAD that prior to the filing of this challenge it permanently discontinued the claim, which appeared in a TikTok advertisement, that "Typically, whitening toothpaste contains peroxide which will damage your teeth… ." NAD will treat the discontinued claim for compliance purposes, as though NAD recommended that the claim be discontinued and the Advertiser agreed to comply.

---

[1] ADA, Tooth Whitening/Bleaching Treatment Considerations for Dentists and Their Patients, ADA Council on Scientific Affairs (September, 2009); The Scientific Committee on Consumer Products (SCCP) Opinion on Hydrogen peroxide, in its free form or when released, in oral hygiene products and tooth whitening products (December 18, 2007); A screenshot from the ADA's website under the topic "OTC and Dentist -Supervised At-Home and In-Office Options"; Australian Competition & Consumer Commission, ACCC takes action on unsafe teeth whiteners, (Dec. 9, 2009); Product Safety Australia, Whitesmile Pty Ltd—DayWhite, NiteWhite & Sunshine Health Whitening Gels and Crest Whitening Strips, (Dec. 7, 2011), The future of teeth whitening, Professor Laurence Walsh;  F.T. Rodrigues, A.P. Serro, M. Polido, A. Ramalho and C.G. Figueiredo-Pina, Effect of bleaching teeth with hydrogen peroxide on the morphology, hydrophilicity, and mechanical and tribological properties of the enamel, Wear, (March 15, 2017) http://dx.doi.org/10.1016/j.wear.2016.11.001; V Cavalli et al. Effects of experimental bleaching agents on the mineral content of sound and demineralized enamels, J Appl Oral Sci. 2018; 26: e20170589.doi: 10.1590/1678-7757-2017-0589.

### B. The Remaining Claims

P&G argued that the remaining claims at issue consist of claims that disparage the safety of peroxide containing teeth whitening products, such as the Challenger's Whitestrips, and comparative efficacy claims, both of which P&G argued are unsupported by the evidence in the record. For its part, Hismile argued that its safety claims are supported. Hismile also disagreed that it makes comparative efficacy claims but argued that, even if its claims are viewed as comparative in nature, such claims are truthful and accurate.

#### 1. The Safety Claims

P&G challenged what it characterized as express claims about the safety of hydrogen peroxide, including that peroxide whitening is "painful," that there are "nasty side effects," that peroxide damages the mineralization of teeth, and that hydrogen peroxide damages "gums and tooth enamel." The Challenger maintained that these claims are unsupported, that it submitted robust safety data for its products which shows no examples of any damage caused by its products, and no adverse effects that have not self-resolved.

P&G also cited to NAD's decision in *Oral Essentials, Inc. (Lumineux Whitening Strips)*, Report #7152, NAD/CARU Case Reports (February 2023) in which NAD reviewed similar claims that an advertiser's product could whiten teeth "without the harm associated with bleaches." P&G argued that, in that decision, NAD ruled that consumers could reasonably understand harm to mean things beyond sensitivity, and that the advertiser had not effectively limited the harm message to sensitivity.

Hismile contended that its claims reasonably convey the story behind Hismile's origin story and its community research which found that people commonly experience side effects of pain or sensitivity with traditional teeth whitening methods.[2] According to Hismile, P&G asks NAD to find that the challenged claims all amount to "harm." Hismile, however, asserted that the message conveyed by the challenged claims is that peroxides used in teeth whitening products carry a "risk" of adverse side effects, such as sensitivity, pain and damage to teeth. Hismile also argued that NAD's precedent in *Oral Essentials* confirms that, while such side effects are not "harm" they must nonetheless be considered as side effects and risks of peroxide teeth whitening.

Hismile also contended that the challenged claims should not be viewed as comparative as to the Challenger's product because there are no express references to Crest Whitestrips. Rather, the Advertiser contended that the claims should be viewed as general claims about the risks associated with peroxide containing teeth whitening products. It is well settled that a competitor does not have to be specifically named in order to trigger a comparative claim. NAD found that one reasonable consumer takeaway from the challenged claims is that statements as to peroxide containing teeth whitening products include comparisons to the Challenger's products which are the leading product in the at home teeth whitening category.

---

[2] Hismile also noted that the Challenger's stated iteration of the claim "Traditional teeth whitening is painful" is not an accurate interpretation of the claim that appears on the Advertiser's website which states "Our story. Let's be honest. Traditional teeth whitening isn't a great experience. It's painful, it causes sensitivity or it can be a long uncomfortable trip to the dentist."

3

As there is no consumer perception evidence in the record, NAD stepped into the shoes of the consumer to determine what reasonable messages were conveyed by the advertising.[3] Advertisers must provide a reasonable basis for all the messages reasonably conveyed by their claims, whether they intended those messages or not.[4] In evaluating the messages reasonably conveyed by an advertisement, NAD reviews the overall net impression created by the advertisement, taking into consideration both the words and the visual images as a whole.[5]

There is a distinction between claims that underscore a product's claimed benefit versus claims that state or reasonably imply that other products are unsafe or pose potential risks or dangers.[6] Here, NAD found that certain of the challenged Safety Claims convey the message that peroxide containing teeth whiteners, such as the Challenger's Crest Whitestrips, are "painful," break down and impact gums and teeth, and thus may "damage"[7] gums and teeth.

NAD determined that these claims are not supported by the evidence in the record. This determination is also consistent with NAD's prior determination in *Oral Essentials*. Hismile argued that the NAD decision in *Oral Essentials* confirmed that "the literature, including those articles describing clinical studies on Crest Whitestrips specifically, found tooth sensitivity and gum irritation experienced by some consumers using peroxide containing tooth whiteners to be generally mild, temporary, and self-resolving during or shortly after treatment."[8] The *Oral Essentials* decision also stated, however, that "Neither the literature provided by [the advertiser] nor the expert declaration conclude that these side effects prove that peroxide-containing tooth whiteners are damaging or unsafe."

Similarly, nothing in the record here demonstrates that peroxide-containing teeth whiteners are unsafe, damaging or painful. Rather, the evidence submitted by Hismile supports that such whiteners "may cause short-term tooth sensitivity and/or gingivial irritation[9]" and that a review "on the use of home-based whitening products found that tooth sensitivity and oral irritation were the most common adverse effects, which were more prevalent at higher concentrations but also considered mild and

---

[3] *Nature's Way Brands, LLC (Alive! Multivitamins)*, Report #5739, NAD/CARU Case Reports (July 2014); *Alde Associates, LLC (daniPro Nail Polish)*, Report #5565, NAD/CARU Case Reports (March 2013).

[4] *Mars Petcare US (PEDIGREE® DENTASTIX® Chews)*, Report #5707, NAD/CARU Case Reports (April 2014).

[5] *The Gillette Company (Venus & Olay Razor)*, Report #5547, NAD/CARU Case Reports (January 2013).

[6] *WaterWipes UC (WaterWipes Line of Baby Wipe Products)*, Report #7086, *NAD/CARU Case Reports* (July 2022).

[7] NAD notes that during the pendency of this challenge, the Advertiser stated that it would voluntarily discontinue the reference to "damage" in the challenged claim "PAP similarly [to peroxide] reacts to tooth stains, without any risk of pain, sensitivity, or damage."

[8] The Advertiser argued that the facts at issue in this challenge are distinguishable from those in *Oral Essentials* for several other reasons including that here the "leading brand," or Crest, is not identified in the claim. Because there are several peroxides used in teeth whitening in the oral care market, Hismile maintained that it is uncertain that consumers would take away a comparison to Crest Whitestrips. In addition, the Advertiser noted that the challenged claims here do not appear on product packaging as they did in *Oral Essentials* but instead appear on Hismile's website.

[9] ADA, Tooth Whitening/Bleaching Treatment Considerations for Dentists and Their Patients, ADA Council on Scientific Affairs (September, 2009).

transient.[10]" It is axiomatic that "claims must be narrowly tailored so that there is a good fit between the advertiser's substantiation and the messages conveyed to consumers by the advertising."[11] NAD found that the Advertiser did not provide support for claims that peroxide containing whitening products are "painful" or cause pain, break down and impact gums and teeth, or "damage" gums and teeth and, thus, recommended those claims be discontinued.

NAD also reviewed the "nasty side effects" claim on Hismile's website. The website states that Hismile's goal was to "Create an at-home whitening treatment that's just as effective as hydrogen peroxide – without the nasty side effects."[12] While the Advertiser's website does not define "nasty side effects," the statement appears directly after the statement "We knew there had to be a better way to whiten. So we did the research, talked to the experts, and learned a lot about traditional whitening methods. The cause of the trouble? Peroxide." It also appears below the claim that traditional teeth whitening is "painful." Elsewhere on the same webpage, Hismile states its "belief that smile care can and should be both effective and safe." (emphasis supplied) In the context in which the "nasty side effects" claim appeared on Hismile's website, NAD determined that one reasonable message conveyed is that peroxide formulations are unsafe, damaging, or painful. As discussed above, NAD found that the Advertiser did not provide support for claims that peroxide containing whitening products are "painful" or cause pain, break down and impact gums and teeth, or "damage" gums and teeth. Accordingly, NAD recommended that the Advertiser discontinue the "nasty side effects" claim on its website.

Nothing in this decision prevents the Advertiser from advertising its company's origin story or highlighting its choice to create products that are peroxide free.

   2.   Comparative Claims

P&G also challenged what it describes as comparative claims that Hismile's products are "just as effective" as hydrogen peroxide and also that PAP, the ingredient in Hismile's whitening strips, works "similarly" to hydrogen peroxide. Here too, the Advertiser contended that the claims should not be viewed as comparative in nature since there is no express reference to Crest Whitestrips. As noted earlier, it is well settled that comparative claims do not have to identify a competitor by name and for the same reasons discussed earlier in this decision, NAD determined that one reasonable consumer takeaway is that claims as to peroxide containing teeth whitening products include comparisons to P&G's Crest Whitestrips.

Hismile further argued the statement that its goal was to create a product that is "just as effective" as peroxide should be viewed merely as an aspirational claim for why the Advertiser launched its first teeth whitening kit in 2014 as described in its company's history on its website. It is well-established that an advertiser is responsible for all reasonable interpretations of its claims conveyed by advertising, not simply the messages it intended to convey.[13] NAD reviewed the "just as effective" claim in the context in which it appeared on the Advertiser's website. While the claim is on the "Our Story" page

---

[10] Screenshot from the ADA's website under the topic "OTC and Dentist -Supervised At-Home and In-Office Options."

[11] *Focus Consumer Healthcare (Pamprin Botanicals),* Report #7247, NAD/CARU Case Reports (January 2024)

[12] Hismile conceded that the phrase "nasty side effects" is strong language but argued that it was non-actionable opinion concerning the side effects of peroxide whitening.

[13] *T-Mobile USA, Inc. (T-Mobile Mobile Phone Service)*, Report #6984, NAD/CARU Case Reports (September 2021)

of the Hismile website, NAD determined that the claim was not merely aspirational, and that one message reasonably conveyed from the plain language "just as effective" is inherently comparative i.e. Hismile's "at-home teeth whitening" products are just as effective as peroxide-containing teeth whiteners. Such a message is reinforced by additional language that appears on the same webpage that the Advertiser's first teeth whitening kit "ticked all the boxes." Because there is no evidence in the record that the Advertiser's whitening products are "as effective as peroxide," NAD recommended that the Advertiser discontinue the "Create an at-home whitening treatment that's just as effective as hydrogen peroxide" claim.

Finally, the Challenger also asserted that the Advertiser's claim that "PAP similarly [to peroxide] reacts to tooth stains" is a parity claim of efficacy with Crest Whitestrips and other peroxide containing teeth whitening products. The Advertiser argued that its claim that PAP "similarly reacts to tooth stains" should be interpreted as a basic explanation about oxidizing activity of PAP noting that this claim appeared on its "How whitening works" webpage. NAD concluded that the words "similarly reacts with tooth <u>stains</u>" (emphasis supplied) goes beyond merely stating the mechanism of action[14] of the product and that one reasonable message conveyed by the claim is that PAP and peroxide have similar reactions to "stains" and therefore similar efficacy in addressing such "stains." In the absence of evidence in the record to support such parity of efficacy, NAD recommended that the claim "PAP similarly reacts with tooth stains" be discontinued.

## IV.   Conclusion

NAD will treat the discontinued claim "Typically, whitening toothpaste contains peroxide which will damage your teeth…"  for compliance purposes, as though NAD recommended that the claim be discontinued and the Advertiser agreed to comply.

NAD recommended that claims that peroxide containing whitening products are "painful" or cause pain, break down and impact gums and teeth, or "damage" gums and teeth be discontinued.

NAD recommended that the Advertiser discontinue the "Create an at-home whitening treatment that's just as effective as hydrogen peroxide" claim and that "PAP similarly reacts with tooth stains."

## V.   Advertiser's Statement

Hismile will comply with NAD's recommendations. We disagree with the decision but acknowledge the recommendations of NAD as the self-regulatory body for advertising in the United States. This decision highlights a need for international alignment on the enforcement and adjudication of such codes. This is becoming particularly important given the emergence of digital advertising and the global reach of social media platforms. We endeavor to collaborate with self-regulatory bodies internationally to achieve this alignment, which we feel will promote fair and balanced decisions in global advertising. We remain committed to complying with the respective advertising laws and regulations of the countries in which we advertise. **(#7276 HJS, closed on 04/02/2024)**

© 2024 BBB National Programs

---

[14] Elsewhere on the same webpage, Hismile describes PAP and peroxide both using "oxidizing action."